SAM W. TAYLOR, Judge.
On June 24, 1982, a Mobile Circuit Court jury found the appellant guilty of manslaughter. He was sentenced to three years’ imprisonment.
A difference of opinion arose at the Beat of the Bay Social Club in Mobile, between the appellant Wilmer Carson and the deceased James Sewell on the night of January 10, 1982. Sewell drew a gun; Carson managed to wrest the gun away from Se-well and in addition he pulled his own gun. Sewell then ran from the club and the appellant fired into the air while still inside the building. He then went to the door of the club and shot Sewell. The appellant followed Sewell out into the parking lot and shot him two more times. Having emptied both guns, he then hit the victim twice in the face with a gun, also allegedly in self defense. The appellant then left the scene by car. The forensic pathologist who performed an autopsy on Sewell testified that any one of the victim’s three bullet wounds could have caused death.
Lieutenant Vincent Richardson of the Mobile Police Department testified that on January 12, 1983, he and Sergeant John Boone went to the “intensive surgical” area of the University Medical Center to attempt to get a statement from James Sewell. The lieutenant described the condition of the victim as “serious” when he arrived at the hospital. The witness stated that Sewell was able to converse but “... he didn’t talk all that loud or rush through anything.” (R. 130) Richardson said the victim identified a picture of the appellant as that of the person who shot him, that picture having been among five other pictures.
The witness stated that after Sewell identified the appellant’s picture, the victim was told by Richardson that he was in “very serious condition.” Sewell indicated to the witness that he knew he was in very serious condition and he then made a statement recorded by the officers present. The statement described the circumstances surrounding the shooting and identified the appellant as the man who had wounded Sewell. Lieutenant Richardson testified that when he asked the victim if he was telling the “absolute truth” James Sewell replied “Yes, sir.”
Appellant’s sole issue on appeal is whether or not the comments made by the victim to Lieutenant Richardson before he died were properly admitted into evidence. Appellant claims that the statement Sewell made at that time does not qualify under the dying declaration exception to the hearsay rule, contending that the requisite state of mind of the victim was not proven.
It is true that in order to introduce a dying declaration into evidence without violating the rule against hearsay, it must be shown that the declarant believes his death will occur soon. C. Gamble, McElroy’s Ala *1352 bama Evidence § 248.01(1) (3d ed. 1977). However, it is not necessary that the declar-ant’s state of mind be proved by his own words. Id.
As this Court has said:
“In determining if a declaration should be allowed in evidence, the trial judge should consider statements of the deceased, the nature and gravity of his wounds, his physical condition, the length of time between the infliction of the wound and death, the cause of death, and all other facts tending to prove the state of mind of the deceased at the time the declaration was made. Bell v. State, 402 So.2d 1 (Ala.Cr.App.1981).
After a careful consideration of all the circumstances surrounding the statement made by the victim, we find that the trial judge correctly applied the law in allowing the declaration into evidence.
We find it unnecessary to engage in semantic debate over whether Officer Richardson’s characterization of Sewell’s condition as “very serious” rather than “critical” rendered the victim’s subsequent statement inadmissible as a dying declaration. It is common in our society to avoid direct mention of death and dying; any euphemism seems to be preferred. The manner of speech of the witness to the declaration in discussing the condition of the dying person may also be considered, since pauses and hesitations sometimes take the place of the “unspeakable” fact.
Only 38 hours after Lieutenant Richardson received his statement, Sewell died from the wounds inflicted by the appellant.
We find that because of the extent of his injuries, his expressed realization of the severity of his condition, and the short time within which he died after making his statement, the deceased was indeed cognizant that his death was imminent when he spoke to Richardson.
When determining whether the statement of a decedent qualifies as a dying declaration, this court will not overturn the finding of the lower court if sufficient evidence sustains the ruling. Bell, supra. Thus, the judgment is due to be affirmed.
AFFIRMED.
All the Judges concur.